**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANNI SUTANA,

    Plaintiff,

v.                                                                                                  Case No. 13cv00210 JCH/LAM

STATE OF NEW MEXICO, ECONOMIC DEVELOPMENT DEPARTMENT;
JONATHAN ("JON") BARELA, individually and in his official capacity;
BARBARA G. BRAZIL, individually and in her official capacity;
WADE JACKSON, individually and in his official capacity;

    Defendants.

**PLAINTIFF'S MOTION TO RELEASE LIEN OR, ALTERNATIVELY,
MOTION TO REDUCE AMOUNT OF LIEN**

**COMES NOW** Plaintiff Danni Sutana [hereinafter "Sutana"], by and through her counsel of record, Law Offices of Michael E. Mozes, P.C. (Michael E. Mozes), and hereby submits her Motion to Release Lien or, Alternatively, Motion to Reduce Amount of Lien.  Mr. Thompkins has been contacted regarding this motion and opposes the granting of the same.  As grounds therefor, Sutana states as follows:

**I.  FACTUAL ALLEGATIONS**

1.      On September 11, 2012, Sutana hired Nathaniel Thompkins, Esq. ("Thompkins"), to represent her on an employment matter related to Sutana's employment with the New Mexico Economic Development Department ("NMEDD"). *Engagement Ltr., dated 9/11/12, attached hereto as Exhibit 1*.  The engagement letter from Thompkins set forth a "hybrid Contingency Fee and Retainer Fee" in the amount of $10,000. *Id., p. 1*.  The engagement letter specifically notes that the $10,000, despite the contingency aspect of Thompkins representation, was to "cover the initial amount of attorneys fees and costs." *Id.*

2. Subsequently, on December 1, 2012, Sutana signed an Hourly Fee engagement letter with Thompkins related to representation on a State Personnel Office ("SPO") administrative matter dealing with Sutana's termination from the NMEDD in October 2012. *Engagement Ltr., dated 12/1/12, attached hereto as Exhibit 2*. On January 10, 2014, Thompkins sent Sutana an amended engagement letter in response to Sutana's concerns that her legal matters had stalled and Sutana was considering the legal actions in the SPO and federal court. *E-Mail String, B. Thompkins & D. Sutana, dated 1/10/14, attached hereto as Exhibit 3*. The amended engagement letter stated any fees associated with the SPO matter would not be charged to Sutana until a settlement in the federal action resulted. *Id.*

3. The billing records from Thompkins show that during the months of September, October, and November 2012, Thompkins' office billed Sutana principally for the SPO matter. *SPO Billing Records, pp. 1-3, attached hereto as Exhibit 4; Federal Suit Billing Records, p. 1, attached hereto as Exhibit 5*. These billings pertained to matters Thompkins allegedly worked on prior to the December 1, 2012 engagement letter being executed.

4. Thompkins admits that significant factual overlap at all times existed between the two matters Thompkins represented Sutana on as of December 1, 2012. *Exh. 3.*

5. Sutana, through the offices of Thompkins, filed a lawsuit against the NMEDD and a group of individually-named Defendants in the First Judicial District Court of the State of New Mexico on December 29, 2012. *Exh. 5, p. 1*. Sutana filed an amended complaint in the State court on January 8, 2012. *Id., p. 2*. This suit was eventually removed to the New Mexico federal district court on March 4, 2013. *Docket Sheet, #1:13-cv-00210, No. 1, attached hereto as Exhibit 6*.

6. The SPO matter proceeded forward through the administrative process during 2012-2014. The parties exchanged written discovery and engaged in limited motion practice. Deposition discovery consisted of three depositions taken by Thompkins, those of Jon Barela and Barbara Brazil (two volumes). The Barela deposition, taken April 23, 2014, lasted 2.3 hours. *Depo. of J. Barela, pp. 1 and 83, attached hereto as Exhibit 7*. Thompkins billed Sutana 7.1 hours for the Barela deposition, which is clearly misdated in the records. *Exh. 4, p. 11*. The first deposition of Brazil took place on August 21, 2013 and lasted 3 hours. *Depo. of B. Brazil, Vol. I, pp. 1 and 110, attached hereto as Exhibit 8*. Thompkins billed 5.8 hours for this deposition. *Exh. 4, p. 8*. Brazil Volume II was taken on April 22, 2014 and lasted 1.8 hours. *Depo. of B. Brazil, Vol. II, pp. 1 and 62, attached hereto as Exhibit 9*. Thompkins billed Sutana 8 hours for the taking of this deposition. *Exh. 4, p. 11*.

7. Throughout the billings of Thompkins related to the SPO matter, there are questionable charges for attorney services that are duplicative, questionable, and inflated. These billings run the gamut from administrative charges to drafting and review of documents.

8. Thompkins hired an expert from California during the course of the SPO process and the federal action for the purpose of addressing employment/Human Resources matters. The expert, a Dr. Brian Kleiner from Fullerton, was never designated in the federal action and provided no expert report, supporting documents, nor testimony during the course of the SPO matter or the federal action. The billing records indicate that Thompkins paid Dr. Kleiner a $2,500 retainer. *Exh. 5, p. 5*. However, the documentary evidence now in Sutana's possession shows that Thompkins billed the one letter in the record to or from Dr. Kleiner in the SPO matter, *Thompkins Letter to Kleiner, dated March 21, 2013, attached hereto as Exhibit 10; Exh.*

*4, p. 5*, that the retainer paid was $1,000, not $2,500, *Exh. 10,* and that Kleiner may have reviewed some documents without rendering an opinion as to their relevance and significance in Sutana's legal matters. *Id.*

  9. Prior to a hearing on the SPO matter, the parties settled the SPO dispute for $50,000. At all times related to the settlement of the SPO matter, Sutana disagreed with the distribution of the settlement proceeds–which resulted in Thompkins receiving the entire $50,000 amount. Sutana had relied on the representation of Thompkins that the SPO fees would be paid out of the federal litigation in deciding to sign off on the SPO settlement release. *Exh. 3, p. 1; Email String, Thompkins & Gardner, dated 6/14-15, 2014, attached hereto as Exhibit 11.* According to Thompkins billing records, the total amount of the fees and costs accrued during the SPO process, with approximately a day's worth of depositions and no hearing, amounted to $62,570.92. *Exh. 4, p. 14*.

  10. Although the settlement check was made out to both Sutana and Thompkins, Sutana did not receive a copy of the check until almost two months after Thompkins had negotiated the check without notice to or prior approval of Sutana. *Email String, Sutana & McNurlin w/Copy of Check, dated 8/12-13/14, attached hereto as Exhibit 12*. Even then, Sutana had to petition opposing counsel for a copy of the check because Thompkins failed to provide a copy to her. *Id.* At no time did Sutana sign off on the settlement check although she was a stated payee on the check. *Id., p. 5*.

  11. Sutana felt deceived, ignored, and abandoned by Thompkins during the entire SPO settlement process and the distribution of the settlement funds.

  12. During the course of the federal action, Thompkins filed a Third Amended

Complaint, adding claims under the New Mexico Whistleblower Protection Act ("WPA") and the Fraud Against Taxpayers' Act ("FATA"). *Exh. 6, Doc. 10*.

12. While the SPO process was in progress, Thompkins notified Sutana that he intended to stay the federal process during the course of the SPO process. The parties jointly moved for a stay in this matter on September 3, 2013. *Exh. 6, Doc. 24*. The Court granted the motion on September 13, 2013. *Id., Doc. 25*. At the end of the day, the email correspondence demonstrates that Thompkins coerced Sutana to accept the non-beneficial SPO settlement because resolution of the SPO matter would supposedly allow the judge to lift the stay. *Exh. 11; Email String, Thompkins & Sutana, dated 5/29-30/14, attached hereto as Exhibit 13*. Of course, Thompkins could have and should have had the stay lifted without using it as a tool to produce the SPO settlement that was entirely beneficial to him.

13. On July 10, 2014, the Honorable Robert H. Scott, the United States Magistrate Judge assigned to the federal case, lifted the stay. *Exh. 6, Doc. 30*.

14. Thompkins, apparently because of the disputes and differences with Sutana associated with the winding down and settlement of the SPO matter in the period May-August 2014, filed a motion to withdraw as Sutana's counsel in the this matter on August 12, 2014. *Exh. 6, Doc. 33*. The motion to withdraw filed by Thompkins notes that "[S]utana has taken actions which prevent counsel for Plaintiff from effectively and properly continuing to represent her." *Doc. 33, p. 1*. This is, of course, language showing that Sutana had decided to discharge Thompkins in the federal case because of the settlement acts and failures to act of Thompkins. The Court granted the motion to withdraw on August 14, 2014. *Doc. 33*.

15. Sutana's current counsel, Michael E. Mozes ("Mozes), entered an appearance in

this matter on behalf of Sutana on September 17, 2014.  *Exh. 6, Doc. 36*.

16. During the course of Thompkin's representation of Sutana in the federal court action, Thompkins sent out no written discovery, took no depositions, and did nothing more than fulfill duties related to pre-discovery matters.  *See generally, Exh. 6, Docs. 6-34*.

16. Upon review of Thompkins' billing records for the federal case, the following was discovered: (1) although Thompkins had already billed out over 50 hours in attorney and paralegal time on the SPO matter prior to the filing of the initial complaint in State court, he billed Sutana 26.3 hours for the drafting of the complaint, *Exh. 4, pp. 1-3; Exh. 5, p. 1*; (2) Thompkins repeatedly admitted to Sutana in writing that the SPO and litigation matters had significant overlap, *Exh. 3; Email String, B. Thompkins & Sutana, dated 1/20-21/13, attached hereto as Exhibit 14*; (3) the federal suit billing records have an entry for June 6, 2013 showing Thompkins expended 1.3 hours reviewing discovery that had been allegedly sent by Defendants. *Exh. 5, p. 3*.  However, the SPO billing records of Thompkins show that these records were sent in relation to the SPO matter and Thompkins had already billed Sutana in the SPO matter, *Exh. 4, p. 7*; (4) the federal case billing records show that Thompkins billed Sutana for 20.9 hours on matters related to the drafting of the Joint Status Report ("JSR"), a grossly exaggerated amount for time spent in preparing the JSR, especially in light of the fact that large portions of the JSR are simply cut-and-paste exercises from SPO documents, *Exh. 5, p. 3, see also Doc. 18*; (5) Thompkins claims he expended 3.2 hours on the drafting of Initial Disclosures to Defendants–the document is almost entirely a cut-and-paste effort from the JSR; (6) after the case was stayed, Thompkins traveled to California to allegedly meet the same expert he had billed Sutana for in the SPO matter. *Exh. 5, p. 4*.  This expert provided no report, did not testify at any time, and

apparently did nothing in this matter. Thompkins billed Sutana 10.2 hours for a supposed two hour meeting with the expert in California. *Id.* Sutana contacted the expert after this alleged meeting and Dr. Kleiner stated he had never met Thompkins, among other things; (7) on June 23, 2014, Thompkins filed a page-and-a-half status report in the federal action for which he billed Sutana 3.5 hours, *Doc. 26; Exh. 5, p. 4*; and (8) despite taking no depositions and issuing no written discovery in this matter, Thompkins billed Sutana an astronomical $10,637.00 in costs for things such as LEXIS/Westlaw research ($4391) (which by the way works out to over a $1,000 per month during the active life of the case in this court under Thompkins' representation), a retainer of $2,500 for an expert witness who provided nothing to the federal litigation, and $810 for Thompkins' travel costs to Los Angeles. *Exh. 5, p. 5*.

17.     In addition to the above, Thompkins consistently overbilled Sutana for routine matters in this case related to review of documents and filing of pleadings. Incredibly, Thompkins billed Sutana $2,619.50 for paralegal fees where the billing records show that Thompkins' paralegal worked on Sutana's case for 1.1 hours. *Exh. 5, p. 5*.

18.     The total amount of fees Thompkins maintains are due and owing in this matter, based upon Thompkins billing records, is $24,497.89, which includes a deduction of $10,000 for the retainer paid by Sutana in September 2012. *Exh. 5, p. 5*. Therefore, Thompkins claims he accrued $34,497.89 in fees and costs during the pendency of the federal action.

19.     After Mozes became Sutana's counsel, this matter was fully litigated, including the taking of numerous depositions, responding to at least three motions to dismiss and preparing to respond to nine motions for summary judgment, exchanging and responding to written discovery, and expending significant costs and time in preparing the case for trial.

20. On May 22, 2015, this case settled through the efforts of the parties and the United State Magistrate Judge, the Honorable Lourdes A. Martinez. *Doc. 112.*

21. Prior to settlement, Mozes had communications with Thompkins in an effort to address any outstanding issues of fees and costs demanded by Thompkins. Sutana and Thompkins had not reached an agreement prior to the settlement conference on the appropriate amount of fees and costs due Thompkins. However, discussions between Thompkins and counsel for Sutana continued during the settlement conference and afterwards.

22. On May 28, 2015, Thompkins filed an attorney's charging lien in this matter, seeking to recoup his claimed attorney's fees and costs. *Doc. 113*.

23. Sutana disputes the amount of attorney's fees and costs that Thompkins is claiming.

24. Thompkins filed the Motion to Withdraw as Counsel in this matter because he was aware that Sutana had discharged him for cause because of Thompkins' actions in the SPO matter. *Doc. 33*.

## II.  ARGUMENTS AND AUTHORITIES

**A.     The Contingency Fee Agreement Violates NMRA 16-105(C).**

The September 11, 2012 Engagement Letter setting forth the contingency fee on the federal suit clearly transgresses the requirements of NMRA Rule 16-105. Rule 16-105(A) requires that the reasonableness of an attorney's fee examine the time and labor required, the amount involved and the results obtained, time limitations imposed by the client, and whether the fee is contingent, among other things. *Id., at paragraphs (1), (4), (5), and (8)*. Attorneys, pursuant to Rule 16-105(A), are prohibited from charging or collecting "an unreasonable fee or

an unreasonable amount for expenses."

With respect to contingency fees, Rule 16-105(C) notes that the fee agreement must (1) state the method by which the fee is to be determined, (2) state the percentage to be paid the attorney in the event of settlement, (3) and the costs the client is responsible for, whether a prevailing party or not.  The September 11, 2012 contingency fee arrangement pertinent to this matter nowhere references states the method by which the contingency fee is to be calculated, the percentage to be paid to Thompkins in the event of a recovery, nor the costs Sutana would be responsible for in the event of being a non-prevailing party.

These open violations of Rule 16-105 render the contingency fee arrangement unenforceable, invalid, and without effect.

    **B.**    **Thompkins' Charging Lien Is Not Enforceable.**

        **1.**    **An attorney's charging lien is only enforceable where supported by a valid contract between the attorney and the client.**

The enforceability of an attorney's charging lien considers a number of factors:

        i)    whether a valid contract exists between the attorney and client;
        ii)    whether the attorney recovered a fund for the client;
        iii)    whether the attorney gave clear and unequivocal notice to the client of his or her intent to assert a lien against any recovery; and
        iv)    whether the assertion of the lien is timely.

*Moffat v. Branch*, 2002-NMCA-067, ¶ 3, 132 N.M. 412, citing *Sowder v. Sowder, ,* 1999-NMCA-058, ¶¶ 10-14, 127 N.M. 114*.

In the case before the Court, it is clear that the contingency fee agreement at issue between Thompkins and Sutana did not comply with the requirements of Rule 16-105.  For the reasons noted in Section II(A), the contract set forth through the September 2012 engagement

9

letter is invalid and unenforceable.

### 2. Thompkins did not recover a fund for Sutana.

An attorney charging lien only attaches to the "tangible fruits" of the services provided by an attorney. *Moffat, 2002-NMCA-067 at ¶ 11*. Entitlement to payment through a charging lien is, therefore, tied to an attorney's efforts producing and resulting in a money recovery to the client. *Sowder, 1999-NMCA-058 at ¶10*. The mere provision of services at some point of representation is not sufficient to enforce a charging lien. *Id.* Where the attorney's efforts produce no "tangible fruit," the charging lien is not enforceable. *Id.*

As the docket sheet in this matter indicates, after Mozes assumed representation of Sutana's interests, this matter was then vigorously litigated. This matter was originally filed in the State court in December 2012 and removed to the federal court in March 2013. Only pre-discovery matters were handled by Thompkins until the stay was sought. *Exh. 6, Docs. 7-25*. Following the lifting of the stay Thompkins did nothing more than submit a status report, attend a status conference, and file his withdrawal. *Exh. 6, Docs. 26, 29, and 33*. During the entire course of his representation in this matter, Thompkins took no depositions, did not send nor respond to written discovery, and engaged in no motion practice.

Mozes entered an appearance in this matter on September 17, 2014. *Exh. 6, Doc. 36*. Within weeks of Mozes' entry, Sutana responded to outstanding discovery from Defendants, *Id., Doc. 38*, and circulated and filed a proposed Fourth Amended Complaint, *Id., Docs. 39 and 43*. Mozes underwent a major surgery in late October 2014 and was out of his office for an extended period of time. In January 2015, Sutana took the depositions of Jon Barela, Wade Jackson, and Barbara Brazil–all individually-named Defendants. In March 2015, the depositions of Dolores

Gonzales, Mary Armijo, and Georgette Chavez–all NMEDD employees at the time the claims arose in this matter–were deposed by Sutana. The continued deposition of Wade Jackson was also taken. In March and April 2015, Mozes attended the deposition of Sutana.

In addition to this discovery, Sutana, through the efforts of Mozes, responded to and sent out written discovery in this matter. *Exh. 6, Docs. 50, 56, 61, 65, 66, 71, 72, 77, and 78*. Moreover, Sutana responded to three motions to dismiss that essentially sought dismissal of the entire case. *Id., Docs. 62, 63, and 64*. Furthermore, Sutana responded during the course of this litigation to a 38-page letter from Defendants related to alleged discovery deficiencies. In other words, this case was thoroughly litigated by Sutana following Mozes' entry.

Those efforts produced a satisfactory recovery to Sutana at the settlement conference on May 22, 2015 before the Honorable Lourdes A. Martinez. New Mexico courts have rejected charging liens by attorneys whose services do not produce "tangible fruits" of recovery. *Moffat v. Branch*, 2005-NMCA-103, ¶ 001,138 N.M. 224; *Moffat*, 2002-NMCA-067, ¶¶ 4 and 11. Where the attorney's work produces no fruit, a charging lien fails. *Sowder*, 1999-NMCA-058, ¶ 11. Under the facts of this case, Thompkins' labor did not produce the "positive fruits" of a recovery. Indeed, Sutana's contention is that Thompkins efforts hindered a recovery in this matter and delayed the litigation of claims that had been stayed for no legitimate reason. Finally, the record evidence shows that Thompkins improperly connected this matter to the SPO case and then used the delay to compel and deceive Sutana to accept a settlement contrary to her interests in the SPO matter.

Therefore, based on the arguments set forth in Sections II(B)(1)and (2), Sutana maintains that the Court should find that the charging lien is unenforceable and order that the lien be

released.

### 3. Alternatively, Sutana objects to Thompkins' charging lien because it includes fees and costs that are excessive and unreasonable.

Rule 16-105(A) prohibits the charging of unreasonable fees and expenses to clients. Charging liens in New Mexico are governed by equitable principles. *Ulibarri v. Padilla, 2008-NMCA-110, ¶ 14, 144 N.M. 679; Sowder, 1999-NMCA-058 at ¶ 9; Rhodes v. Martinez, 1996-NMCA-096, ¶ 6, 122 N.M. 439*.  Due to the exercise of equitable power at the court's discretion, the court may inquire into the reasonableness of the fees and expenses claimed through the charging lien. *Id., citing Northern Pueblos Enters. v. Montgomery, 98 N.M. 47, 49 (1982); see also Ulibarri, 2008-NMCA-110 at 21*.

Sutana has set forth above the numerous questionable and unreasonable charges included in the billings provided by Thompkins in both the SPO and federal matters.  Sutana, by way of this motion, is seeking the equitable intervention of this Court to determine whether the disputed charges set forth above should be excluded from the amount of the charging lien filed by Thompkins.  A significant reduction is appropriate with respect to the dollar amount of the lien.

In balancing the equities of this matter to determine how fees should be awarded, the Court is permitted to evaluate, among other factors, the amount of work done, the degree of risk, and the conduct of each attorney. *Ulibarri, 2008-NMCA-110 at ¶ 14*.  Nothing in the fee agreements signed by Sutana provides for the recovery of a lien under these circumstances. *See Exhs. 1 and 2*.  With respect to those specific factors, the facts of this matter show that Thompkins did minimal, low risk work in this case that consisted of a large-scale "borrowing" from the SPO matter.   On the "conduct" factor, Thompkins was almost fully paid at his hourly

rate on the SPO case by way of the settlement. Sutana received nothing. It is clear that Thompkins "pushed" Sutana to accept this unfair and clearly self-interested settlement circumstance by first promising that Thompkins would not get paid on the SPO matter until the federal matter resolved, then negotiating the settlement check without notice or involvement of Sutana, and finally claiming that the federal suit could not move forward until the SPO settlement was completed. Thompkins led Sutana to believe that the federal case was being held hostage by the federal judge until the SPO matter was completed. Of course, this does not remotely accord with the possibility of moving forward in the federal action while the SPO matter was pending. Equity is contrary to Thompkins recovering an unreasonable fee. *Northern Pueblos, 98 N.M. at 49*.

      Due to Thompkins' conduct in the SPO matter, Sutana decided to discharge him from continued representation on the federal case. An attorney is entitled to a contingency fee stipulated in a fee agreement on the happening of the contingency only where the client's discharge was without cause. *Walters v. Hastings, 84 N.M. 101, 107 (1972)*. Sutana not only discharged Thompkins for cause, but, at the time of the discharge, Sutana had adequate cause to do so. Thompkins' entitlement to a fee in this matter is defeated by his for cause discharge.

      The Court may also review the conduct of Thompkins with respect to his self-proclaimed admission that the SPO and the federal matter had significant overlap. Should this Court determine that at the time of the filing of the original complaint and the filing of pre-discovery pleadings (including the unreasonably-billed JSR) that Thompkins was principally relying on SPO pleadings to prepare these pleadings, then Sutana requests that the Court consider that the billing records reflect that Thompkins billed the federal case as if the SPO case never existed.

This conduct violates both the letter and spirit of Rule 16-105.

This requested equitable intervention of the Court with respect to specific charges in the billing records does not preclude Sutana's claim that Thompkins' charging lien should be released and Sutana owe Thompkins nothing under the lien under the arguments presented above.

### III.  CONCLUSION

In light of the foregoing facts, arguments, and authorities, Sutana respectfully requests that this Court release the charging lien filed by Thompkins.  Alternatively, Sutana requests that the Court examine the propriety of the billings Thompkins produced to Sutana and reduce the amount of fees and costs, if any, owing on Thompkins representation.  Further, Sutana advises the Court that she is prepared to deposit in the Court registry from the settlement proceeds the full amount of Thompkins' charging lien until this matter is finally resolved by the Court.

Respectfully submitted,

LAW OFFICES OF MICHAEL E. MOZES, P.C.

*/s/ Michael E. Mozes*
MICHAEL E. MOZES
5732 Osuna Rd. NE
Albuquerque, NM 87109-2527
(505) 880-1200
(505) 881-2444 (fax)
Michael@mozeslawoffice.com

**I HEREBY CERTIFY** that a copy of the foregoing pleading was served upon opposing counsel of record, Christopher T. Saucedo and Frank Apodaca, Esqs., and Nathaniel Thompkins, Esq., via e-mail and through filing with the Court's CM/ECF electronic filing system on this 10th day of June, 2015.

*/s/ Michael E. Mozes*
Michael E. Mozes