**BEFORE THE PERSONNEL BOARD**
**STATE OF NEW MEXICO**

IN THE MATTER OF
DANNI SUTANA,

   **Appellant,**

v.            **Docket No. 12-099**

NEW MEXICO ECONOMIC
DEVELOPMENT DEPARTMENT

   **Appellee.**

**STIPULATED PRE-HEARING ORDER**

CONTESTED FACTS AND ISSUES:

Appellant's Facts:

 1.  Prior to being hired in March 2011, Appellant was erroneously told that the EDD budget was $6.8 million;

 2.  Subsequent to Appellant's acceptance of an offer of employment, she learned that EDD's budget was $148.3 million;

 3.  Without proper assistance for a $148.3 million budget, Appellant was forced to work long hours;  By June 2011 Appellant accumulated 72.5 hours of "Comp. Time";

 4.  On September 2, 2011, Appellant placed the Secretary, Deputy Secretary, Director and Department Counsel on notice that (1) being in the position for 5 months and no defined roles and responsibilities; (2) budget going from $6.8 to $148.3 million (95% increase); (3) outline the position she accepted and the one that she was actually working; (4) she had worked enough time to earn 252.75 hours of comp time, 72.5 of which she lost;

 5.  On September 2, 2011, Appellant requested an Alternative Dispute Resolution;

 6.  On September 7, 2011, EDD's Counsel, Wade Jackson, wrote and advised Appellant that  EDD   would treat her e-mail as a formal complaint;



Exhibit K

7.     On September 20, 2011, EDD's Counsel, Wade Jackson, wrote a "Response" to Appellant's September 2, 2011, Notice.  However, Mr. Jackson in an attempt to fraudulently represent that Mr. A. Kurt Saenz had authored EDD's Response he placed Mr. Saenz's name as the author;

8.     Mr. A. Kurt Saenz never wrote, participated in or had knowledge that EDD's Counsel, Wade Jackson, had written a formal Response to Appellant's September 2, 2011 Notice and he does not agree with the factual contents contained in Mr. Jackson's Response;

9.     Appellee in its' Response to Appellant's September 2, 2011, Notice failed to follow NMCA 1.7.6.13 C and provide Appellant with the requested ADR;

10.    Appellee did not follow the Complaint Resolution Policy ;

11.    Appellee placed EDD's Response in Appellant's employment file without her knowledge and the knowledge of A. Kurt Saenz;

12.    On August 8, 2011, Appellee advised Appellant that she would receive a raise.  Mr. Saenz wrote to Mr. Jackson to "increase in band" for Appellant at 15% on September 1, 2011.  Appellant was never given the promised pay raise;

13.    Appellee discriminated against Appellant in regards to its refusal to give Appellant the promised pay raise;

14.    Appellee, via its employees, in particular Deputy Cabinet Secretary Barbara Brazil, harassed Appellant the day before going on medical leave by forcing her to be available while on medical leave.  Ms. Brazil asked Appellant if she had PTSD (Post Traumatic Stress Disorder) because she was from Loas;

15.    Appellee retaliated against Appellant for filing her EEOC complaints in June. Thereafter, Appellee filed numerous Notice of Contemplated Actions only to dismiss them and then file them again;

16.    Appellee discriminated against Appellant based upon her Ethnic Origin;

17.    Appellant created the FY12 operating budget, FY13 budget request, FY13 operating budget and FY14 budget request, which were approved by her supervisors and the CFO;

# Exhibit K

18.    In the FY14 budget request, Deputy Secretary, Barbara Brazil, made changes to the strategy so frequently that accurate information for the budget request was not available;

19.    The FY14 budget request did not contain numerous errors due to Ms. Sutana's work product. Errors that were contained in the budget were a direct result of Jennifer Mosley, ASD Director and CFO, refusing to work with Ms. Sutana during a review of the budget and Deputy Secretary Barbara Brazil providing Ms. Sutana with inaccurate and incorrect information;

20.    The supporting schedules for the FY14 budget did match the budget because it matched the "roll-up" to the Agency code since there were five P codes;

21.    Deputy Secretary Brazil and Ms. Chavez attended the FY14 training and agreed to review the FY14 request as it is completed;

22.    Deputy Secretary Brazil and Ms. Chavez failed to review the budget as agreed upon at the FY14 training;

23.    DFA reviewed the FY14 budget and Greg Baird of the DFA did not find that the supporting schedules did not match and did not find that the budget was fatally flawed;

24.    Ms. Mosely was not employed by Appellee at the time the FY13 budget request was created and submitted. The CFO, A. Kurt Saenz, Secretary John Barela and the DFA reviewed and approved the FY13 budget request; The DFA did not reject the FY13 budget request;

25.    Deputy Secretary Barbara Brazil instructed Dolores Gonzales and Georgette Chavez to establish a process to identify and pay all prior year bills; Deputy Secretary Brazil wanted to assign the project to Dante Wallace but Ms. Gonzales protested that she could do the job. Ms. Gonzales and Ms. Chavez both worked on the project.

26.    Appellant did not supervise Ms. Gonzales but did help her and Mary Armijo identify reports that would assist her in the task given by Deputy Secretary Brazil;

27.    Appellant had no authority to decide on the payment of EDD's prior year's bills; Appellant's job was to provide the data regarding budget availability. Appellant can make recommendations but has no authority to determine how EDD's funds are spent; When Appellant advised Deputy Secretary Brazil of two options, (1) pay current year bills first; or (2) pay



3

prior year bills first; Deputy Secretary Brazil elected to pay the current year bills first;

28.   The SHARE system had been jamming and was experienced by Ms. Mary Armijo and Ms. Gonzales.  When they explained this to Deputy Secretary Brazil, she tasked them (Armijo and Gonzales) with taking the lead, identifying and resolving the problem.

29.   Ms. Armijo identified her prior year bills with the help of Ms. Gonzales. Ms. Gonzales disencumbered funds to prepare for the prior year's paperwork.  Both Armijo and Gonzales rejected Deputy Secretary Brazil's offer of administrative assistance because they felt that teaching someone new, the system, was more work than completing the tasks themselves.

30.   Appellant was not Ms. Gonzales' supervisor as Ms. Gonzales reported to Ms. Chavez.  Appellant would have had no way of knowing that Ms. Gonzales was not completing her work or that she failed to manage the process to catch-up on her work.

31.   On July 31, 2012, Appellant advised Deputy Secretary Brazil that all entries into SHARE to process prior year invoices were complete with only 3 rejections of which Ms. Sutana had already called the help desk and Steve Gonzales at DFA to assist and resolve.

32.   Ms. Armijo was responsible for getting the SHARE supporting paper work to the DFA.  When Deputy Secretary Brazil asked Ms. Armijo if all the paperwork had been submitted Ms. Armijo responded yes.  However, when Ms. Armijo was questioned why the paper work was in the conference room she responded that it needed to be taken to the DFA. Regardless if all the paperwork was completed, SHARE rejected 80% of the entries.

33.   Ms. Armijo and Ms. Gonzales worked on disencumbering $70,000.00 of the ED Division's funds. Since there was only $34,084.73 available in the EDD's 400 category to pay prior year bills the full $70,000.00 could not have been disencumbered.

34.   Appellant properly analyzed the budget variances and Ms. Gonzales properly managed the "fixed costs".   However, the leadership misunderstands both year-end closing and responsibilities within ASD. This misunderstanding resulted in EDD making false accusations against Appellant;

EDD reverted $607,494.36 which it was aware of via the CAFR report period ending June 30 2012.  The report's relevant portion is below:

# Exhibit K

| P512 | | | P526 | | |
|---|---|---|---|---|---|
| 200 | $ | 301,033.30 | 200 | $ | 220,336.95 |
| 300 | $ | 1,943.00 | 300 | $ | 26,294.32 |
| 400 | $ | 1,438.16 | 400 | $ | 25,325.97 |
| | $ | 304,414.46 | | $ | 271,957.24 |
| P514 | | | P529 | | |
| 200 | $ | 86,123.45 | | | |
| 300 | $ | 19,056.11 | 200 | $ | 0.37 |
| 400 | $ | 22,062.29 | 300 | $ | - |
| | $ | 127,241.85 | 400 | | |
| P515 | | | | $ | 0.37 |
| 200 | $ | 0.66 | | | |
| 300 | $ | 1,696.63 | | | |
| 400 | $ | 12,085.57 | | | |
| | $ | 13,782.86 | | | |

The reversion resulted from Management's failure to authorize or hire employees. It had nothing to do with mismanagement of the budget or lack of communications when the projections had been provided.

In the 300s, contractual services category, $48,990.06 would have been reverted, not due to mismanagement of the budget but because not all contractual funds were committed by Divisions.

In the 400s other category, the amount of $60,911.99 closely reflects the amount of prior years that DFA rejected. DFA only accepted approximately $13K of prior year invoices because those successfully made it through SHARE without a budget error.

35. Appellant had a conversation with the DFA on August 11, 2012, the Department requested a budget expansion but it is DFA's determination to decide whether to do it as an expansion or increase to base. Pursuant to the FY14 Request, DFA confirmed it was done as an increase to base, not as an expansion. Appellant was advised, by the DFA, that use of the word expansion would not warrant disciplinary action.

36. Appellant at all times performed her work under considerably hostile, onerous and demanding conditions.

37. Appellee's leadership, failed to understand the budget process, the need for cooperation and communication, the need for accurate strategy planning information that resulted in the problems it has alleged;

38. Appellant has never been advised, counseled, or disciplined for any alleged racially derogatory remarks because Appellant has never engaged in such activities;



Exhibit K

5

39.   Appellant has never been advised, counseled, or disciplined for any alleged entry into a co-worker's workspace.

40.   Appellant's right to record conversations is governed by New Mexico law, which has not been proven to have been violated by the Appellant;

41.   Appellee never advised, counseled, or disciplined Appellant for any violation of the State's vehicle policy but instead is using it, ex-post facto, as a sword in an attempt to justify its state personal violations and discriminatory treatment of the Appellant;

Appellee's Facts

1.   On April 16, 2011, the Appellant was hired to be the Finance Manager for the Economic Development Department ("EDD") based upon her experience and education.

2.   This position required the Appellant to manage EDD's budget, which included the preparation of an accurate budget request for EDD and submittal to the Department of Finance and Administration ("DFA").

3.   The Appellant was responsible for preparing EDD's budget request for both FY13 and FY14.

4.   September 4, 2012 was Ms. Moseley's first day as EDD's Administrative Services Division ("ASD") Director.

5.   One of her first actions on the job was to review the FY14 budget request the Appellant submitted on behalf of EDD.

6.   Ms. Moseley found that the FY14 budget request submitted by the Appellant on behalf of EDD contained numerous errors, including but not limited to the supporting schedules not matching the budget. The budget request was fatally flawed to the extent EDD had to withdraw it and resubmit a corrected budget request.

7.   Ms. Moseley then reviewed the FY13 budget request the Appellant had submitted on behalf of EDD and found that it too contained the same sorts of errors.

8.   In early June of 2012, Deputy Secretary Barbara Brazil instructed the Appellant to establish a process to identify and pay all prior year bills.

9.   Deputy Secretary Brazil approved the Appellant's request for comp time for Mary Armijo and Dolores Gonzales to research and provide a detailed list of the unpaid bills from the prior year.



# Exhibit K

6

10. The Appellant made a decision not to pay any prior year bills until all current year payables had cleared the SHARE system.

11. Deputy Secretary Brazil approved that decision, but followed up with a daily check during the final two weeks before the deadline to pay prior year bills to determine what obligations the Department could disencumber.

12. The Appellant consistently told Deputy Secretary Brazil and ASD staff that they had to wait to take that action until all current year payables had cleared the SHARE system.

13. In the last week prior to the deadline to pay prior year bills, Mary Armijo independently identified all her prior year bills and disencumbered funds in order to pay those bills, but Dolores Gonzales was on leave, of which the Appellant was aware, and fell behind on her encumbrance releases.

14. The Appellant failed to manage the process to catch up Ms. Gonzales's work despite Deputy Secretary Brazil's offer that other administrative personnel were available to help.

15. On the final day for entering any bills for payment, July 31, 2012, the Appellant informed Deputy Secretary Brazil that all entries into SHARE to process prior year invoices were complete.

16. At 5:00 p.m. that day, Deputy Secretary Brazil passed the conference room where the Appellant and her staff were working to find that the work was not completed.  The SHARE entries had been made by the deadline but the hard copy supporting paperwork had not been completed and delivered to DFA by the deadline.  DFA therefore rejected all the SHARE entries for which the required back up documentation was not in their possession by the 5:00 p.m. deadline.

17. The Appellant failed to properly manage this project and failed to utilize the additional resources made available to assist, which could have made the difference in getting the paperwork to DFA on time.

18. ASD staff reported to Deputy Secretary Brazil that the Appellant did not assist in the process other than to re-enter three rejected vouchers and to approve those vouchers entered into the system by others, which the Appellant indicated to her staff took only 30 minutes.

19. The Appellant also failed to recognize that ASD had encumbered $70,000 in the Economic Development Division's budget that could have been disencumbered weeks in advance of the deadline.

# Exhibit K

7

20.     If the Appellant had analyzed the budget variances properly, the funds would have been identified and disencumbered.  The Appellant were responsible for managing "fixed costs" and therefore should have identified the available funds.

21.     Had this issue been managed properly, all prior year expenses would have been paid.

22.     Despite owing contractors and vendors unpaid debts, the Department reverted approximately $700,000 it failed to use in FY12 and failed to properly pay the prior year's bills due to the Appellant's mismanagement and failure to adequately perform the duties of her position.

23.     The Appellant represented to EDD that she was well aware of the budget process and fully capable of managing it.

24.     The Appellant represented to Deputy Secretary Brazil, Wade Jackson, Cathy Visarraga, and others on numerous occasions during the process of preparing the FY14 budget request that a request for funding above EDD's FY13 funding level would constitute an "expansion budget" and have to be requested as such in the Budget Preparation System/Budget Review System.

25.     In fact, because EDD was only requesting sufficient funding to fill its existing vacant positions, which was explained to the Appellant in the request that she prepare the payroll projections, EDD's FY14 appropriations request was not for an "expansion budget" but only for an increase to its "base budget."   A cursory review of DFA's Budget Preparation System (BPS) Installation and User Guide makes this distinction clear.

26.     The Appellant's failure to competently manage EDD's budget resulted in a financial hardship to one of her co-workers.

27.     Gen. Hanson Scott (U.S.A.F. Ret.), Director of the Office of Military Base Planning and Support, was forced to take unpaid leave because the Office's budget was insufficient to cover his salary.

28.     The Legislature passed a special appropriation to fund the Office of Military Base Planning and Support's budget shortfall.

29.     It was the Appellant responsibility to ensure that appropriation was utilized appropriately, but she failed to budget those funds to the Office so that they could be used to pay Gen. Scott's salary.

8



Exhibit K

30. The special appropriation went unspent and was reverted at the end of FY12.

31. Managing the Office's budget and making the appropriated funds available for its use was clearly within the Appellant's job description.

32. On Tuesday, July 10, 2012, Wade Jackson requested updated payroll projections for all vacant positions in EDD by noon on Monday, July 16 to justify and support EDD's FY14 budget request.

33. The Appellant provided the first draft of the projections shortly before 10:00 a.m. on Monday, July 16, but the projections were incomplete and incorrect.

34. The Appellant provided a total of four drafts, each of which had to be corrected by Wade Jackson, before she provided accurate projections at 1:52 p.m. on Monday, July 16.

35. On August 24, 2012, EDD was informed for the first time of issues that warranted further investigation.  Upon further investigation, EDD learned of several additional facts on September 6, 2012.

36. Two EDD staff members complained that on four occasions the Appellant made racially derogatory remarks to Hispanic co-workers in ASD.

37. The Appellant recorded her co-workers' conversations without their knowledge or consent.

38. The Appellant entered a co-worker's office without consent or authorization and without any valid work-related reason for doing so.

39. On September 14, 2012, EDD was informed that while the Appellant was utilizing a state vehicle during her visit to the New Mexico Border Authority she had an unauthorized passenger and non-state employee with her in a state vehicle in violation of 1.5.3.12(B) NMAC.

40. Despite a prior reminder from then-ASD Director Kurt Saenz and a prior verbal reprimand from Deputy Secretary Brazil, on July 10, 2012, the Appellant responded via email to a simple and straightforward question posed by Georgette Chavez in the rude, condescending manner that had become her wont.

STIPULATIONS:

1.

2.



RELIEF SOUGHT BY APPELLANT:

Appellant seeks reinstatement to a position of like status and pay to the position that she occupied at the time of the disciplinary actions.  Appellant also seeks back pay and benefits.


SETTLEMENT FACILITATION:

The Appellee does not agree to participate in good faith settlement facilitation and has incorrectly represented that the parties participated in "mediation".

Appellant is willing to in good faith participate in a settlement conference as there has been no mediation between the parties.


WITNESSES:

For Appellant:

1. **A. Kurt Saenz, former Administrative Services Director, Economic Development Department**.  Is expected to testify that he did not author EDD's response to Appellant's September 2, 2011 Complaint/e-mail.  Is expected to testify that Appellant had not been written-up or disciplined while he was her supervisor.  As well, it is anticipated that he will dispute other facts contained in the response which are not true.

2. **Dolores Gonzales**, supervised by Appellant until April 2012.  It is anticipated that she will testify about her working with Appellant and the improper attempts by EDD management keep her from speaking with Appellant.  It is anticipated that Ms. Gonzales will testify about her knowledge of the "affair" between Wade Jackson and Antoinette.

3. **Georgette Chavez**, Accounting Bureau Chief.  Is anticipated that Ms. Chavez will testify about her working with Appellant during the project that was given to her by Deputy Secretary Barbara Brazil, and the payment of EDD   invoices.

4. **Jennifer Moseley**, ASD Director and CFO.  It is anticipated that Ms. Moseley will testify about when she was hired and her working with Appellant during the subject budget request.  In addition, Ms. Moseley is expected to testify about her conversation with Appellant regarding her medical conditions.



5. **Barbara Brazil**, Deputy Secretary.  Is anticipated that she will testify about the events that she was involved in with the Appellant and set forth in the Notice of Final Action and other various Notice of Contemplated Action.

6. **Jon Barela**, Secretary.  Is anticipated that Mr. Barela will testify about the interaction that he had with Appellant and his knowledge of the facts set forth by EDD against the Appellant.

7. **Wade Jackson**, General Counsel and HR Bureau Chief.  It is anticipated that Mr. Jackson will testify about his correspondence and interaction with Appellant and his handling of the NCAs.  As well it is anticipated that Mr. Jackson will testify about EDD's Response to the September 2, 2011 e-mail from Appellant and his writing the Response and placing Mr. Saenz name on the memo without Mr. Saenz knowledge and/or participation in creating the Response.

8. **Mary Armijo**, EDD employee.  It is anticipated that Ms. Armijo will testify about the events surrounding the SHARE system and the problems that EDD was experiencing with SHARE and getting invoices paid.

9. **Greg Baird**, DFA Analyst.  It is anticipated that Mr. Baird will testify about the budgets and budget requests that were sent to the DFA by Appellant and what if any problems existed or did not exist.  In addition, it is anticipated that Mr. Baird will testify about the alleged "fatal flaw" that Appellee has alleged in its Notice of Final Action.

10. **Bill Mattiace**, Executive Director NM Border Authority (NMBA).   It is anticipated that Mr. Mattiace will testify of his witnessing comments made by Deputy Secretary Barbara Brazil to Appellant.

11. **Marco Herrera**, NMBA. It is anticipated that Mr. Herrera will testify of his witnessing comments made by Deputy Secretary Barbara Brazil to Appellant.

12. **Laura Chupparo,** employee.  It is anticipated that Ms. Chupparo will testify about the "affair" between Secretary Barela and Angela.  As well she is anticipated that she will testify about a procurement that was improperly awarded to a vendor.

13. **Ryan Cangiolosi**, former Governor's Deputy Chief of Staff.  It is anticipated that Mr. Cangiolosi will testify about his receipt of e-mails from Wade Jackson regarding NCAs directed to Appellant.  It is anticipated that Mr. Cangiolosi will testify that the e-mail concerned disciplinary matters which should have remained confidential in accordance with the State Personnel Rules and Regulations.

14. **Governor Susana Martinez**. It is anticipated that the Governor will testify about her receipt of e-mails from Wade Jackson regarding NCAs directed to Appellant. It is anticipated that the Governor will testify that the e-mails concerned



disciplinary matters which should have remained confidential in accordance with the State Personnel Rules and Regulations; and

15. **Therese Varela**, EDD Director.  It is anticipated that Ms. Verela will testify about her budget experience before Appellant became employed and after Appellant was hired.  It is anticipated that Ms. Varela will testify about her experiences with the SHARE system and Deputy Secretary Brazil supplying inaccurate information which impacts the budget process.

16. **Angela Carlton**, Supervisor for Appellant in 2009 at the Behavioral Health Sciences Division.  It is anticipated that Ms. Carlton will testify about Appellant performance in creating and submitting budget request for FY11 and the Operating Budget for FY11.

For Appellee:

1.      A. Kurt Saenz, former Administrative Services Director, Economic Development Department.

2.      Dolores Gonzales, Purchasing Agent, Economic Development Department.

3.      Georgette Chavez, Accounting/Audit Bureau Chief, Administrative Services Division, Economic Development Department.

4.      Ms. Moseley, Administrative Services Division Director, Economic Development Department.

5.      Deputy Secretary Barbara Brazil, Economic Development Department.

6.      Secretary Jon Barela, Economic Development Department.

The parties have the right to interview and/or depose each other's witnesses at a mutually agreeable date, time and place by January 18, 2013.

The parties will submit a final list of witnesses and request for any subpoenas by January 4, 2013.

EXHIBITS:

For Appellant:

1.      NCA – July 10, 2012;
2.      NCA – July 11, 2012;
3.      Notice of Final Personnel Action – July 31, 2012;
4.      July 31, 2012 Notice of Contemplated Personnel Action - Withdrawal;



5.        E-mail dated July 31, 2012, RE: Notice of Final Personnel Action;

6.        Posted Note – Kurt Saenz to Wade Jackson  - "in band increase for Danni and Kevin" – August 17, 2011;

7.        Request for Human Resources Action – August 26, 2011;

8.        State Personnel Office – In Pay Band – (3 pgs.);

9.        Danni Sutana e-mail – September 30, 2011 to Kurt Saenz;

10.      Policies and Procedures – Human Resources Bureau Policies 09/15/2002;

11.      Kurt Saenz & Wade Jackson – Response to Formal Complaint of September 2, 2011;

12.      Wade Jackson e-mail to Danni Sutana – September 19, 2011;

13.      Danni Sutana's e-mail dated September 2, 2011;

14.      Notice of Final Action – October 3, 2012;

15.      EEOC Complaint – Charge of Discrimination - June 15, 2012;

16.      EEOC Amended Charge – July 25, 2012;

17.      Appeal to State Personnel Board – October 29, 2012; and

18.      Appellant's Employee Files :

          i.  Correspondence;

         ii.  Evaluation Information;

               1.  Employee Evaluation – July 12, 2010;

               2.  Manager Evaluation – August 6, 2009;

19.      All documents identified through discovery;

20.      All documents listed by the Appellee; and

21.      All documents that will be used in rebuttal but cannot be identified at this point in the case.

For Appellee:

1.        April 24, 2012 Memorandum re: restructuring.

2.        Secretary Barela's notes of conversations with Georgette Chavez and Dolores Gonzales.

3.        Wade Jackson's notes of conversations with Georgette Chavez and Dolores Gonzales.

4.        Affidavit of Dolores Gonzales.

5.        Statement of Georgette Chavez.

6.        Statement of William Mattiace.

7.        1.5.3.12(B) NMAC.

8.        EDD FY14 budget request.

9.        Ms. Moseley's review of EDD FY14 budget request.

# Exhibit K

10.     Deputy Secretary Brazil's notes of conversation with Danni Sutana.

11.     Prior year bills.

12.     2012 EDD Reversion Notification.

13.     Hanson Scott's time sheets for unpaid leave.

14.     Emails between Danni Sutana and Wade Jackson, July 10-16, 2012.

15.     State Of New Mexico Budget Preparation System (BPS) Installation and User Guide FY 2013.

16.     General Appropriation Act of 2012.

17.     Appropriation to Office of Military Base Planning and Support.

18.     Email from Danni Sutana to Georgette Chavez, July 10, 2012 9:07 a.m.

19.     Acknowledgement of Code of Conduct.

Deadline for filing a final list of exhibits: January 25, 2013.


DISCOVERY:

Discovery demands will be made by December 17, 2013.

Discovery will close on January 18, 2013.



Respectfully submitted,

New Mexico Firm, LLC


By: _____
      Nathaniel V. Thompkins
      Attorneys for the Appellant
      103 St. Francis Drive, Unit A
      Santa Fe, NM 87501
      (505) 988-9750
      nate@newmexicofirm.com



New Mexico Economic Development Department


By: _____
      Wade L. Jackson
General Counsel
Attorney for the Appellee
1100 St. Francis Dr.
Santa Fe, NM 87505
wade.jackson@state.nm.us


Approved:


_____
Hon. R. Scott Summerfield
Administrative Law Judge

# Exhibit K

15